CLERKS OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

8/3/18

JULIA C. DUDLEY, CLERK
BY: s/ K. DOTSON
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 5:18-mj-00042 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SILVERIO GREGORIO ALEJO, | ) | By: Joel C. Hoppe |
| Defendant. | ) | United States Magistrate Judge |

I. Introduction

The United States has filed a criminal complaint charging Defendant Silverio Gregorio Alejo, a native and citizen of Mexico, with one count of unlawfully reentering the United States after deportation, in violation of 8 U.S.C. § 1326(a). ECF Nos. 1, 1-1. At the Defendant's initial appearance before the undersigned Magistrate Judge, the Government asked that the Defendant be detained pending trial on grounds that he posed a flight risk. ECF No. 6. More specifically, the attorney for the Government explained that the Defendant likely is subject to a reinstated removal order, *see* 8 U.S.C. § 1232(a)(5), and that the Bureau of Immigration and Customs Enforcement ("ICE") had lodged a detainer against the Defendant and may deport him before his criminal trial begins. Thus, the Government contends that detaining the Defendant under the Bail Reform Act, 18 U.S.C. § 3142(e), is the only way to reasonably assure his appearance at trial in this matter.

On July 24, 2018, after holding a hearing in accordance with 18 U.S.C. § 3142(f) and hearing argument from counsel for both parties, I issued a written order directing that the Defendant be released on the conditions that (among others) he submit to active GPS location monitoring; agree not to leave this judicial district unless first authorized by the pretrial services officer; and promise to appear in court as required and, if convicted, surrender to serve any

1

sentence imposed. ECF No. 22; *see* 18 U.S.C. § 3142(c)(1). The Defendant shall be released from the United States Marshal's custody after the pretrial services officer conducts a home study. ECF No. 22. This Memorandum Opinion memorializes and further explains my ruling from the bench that the risk that a person facing prosecution for unlawfully entering the United States in violation of 8 U.S.C. § 1326(a) will be deported before trial, without more, does not authorize the Court to detain that person under the Bail Reform Act on grounds that he or she poses a serious flight risk and that no conditions of release can reasonably assure his or her appearance as required at trial. 18 U.S.C. § 3142(c), (e)–(g).

## II. The Legal Framework

Federal law requires a judicial officer, upon the appearance of a person charged with a federal offense, to issue an order that the person be released or detained pending trial. 18 U.S.C. §§ 3141(a), 3142(a). "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also* 18 U.S.C. § 3142(b)–(c). The Bail Reform Act of 1984 instructs judges how to determine whether, notwithstanding the general presumption in favor of release, *United States v. DeBeir*, 16 F. Supp. 2d 592, 593 (D. Md. 1998), a defendant must be detained pending trial because he or she "poses an unreasonable risk of flight [or] a danger to the community, and . . . there are no conditions of release that can adequately mitigate these risks," *United States v. Mallory*, 268 F. Supp. 3d 854, 862 (E.D. Va. 2017). *See United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam) ("[T]he lack of reasonable assurance of either the defendant's appearance or the safety of others or the community[] is sufficient; both are not required."). "A judge may order detention only after a detention hearing, which may be held only if" the case involves at least one

of the six statutory bases set out 18 U.S.C. § 3142(f).[1] *DeBeir*, 16 F. Supp. 2d at 593; *see also United States v. Powers*, 318 F. Supp. 2d 339, 341 (W.D. Va. 2004). "Thus, a finding that one of the six conditions is met is a prerequisite to detention." *DeBeir*, 16 F. Supp. 2d at 593 (citing *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992)); *accord Powers*, 318 F. Supp. 2d at 341 ("Absent application of one of these statutory bases for holding a detention hearing, pretrial detention is not warranted.").

The Government in this case moved to detain the Defendant under subsection (f)(2)(A), which requires a detention hearing "if either the United States or the court believes there is a serious risk of flight."[2] *Powers*, 318 F. Supp. 2d at 341; *see* 18 U.S.C. § 3142(f)(2)(A) (the court

---

[1] The six statutory bases are: (1) a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of ten years or more is prescribed; (2) an offense for which the maximum punishment is life imprisonment or death; (3) an offense involving controlled substances for which a maximum term of imprisonment of ten years or more is prescribed; (4) any felony if the defendant has been convicted of two or more offenses described in the three preceding categories, or two or more State or local offenses that would have been offenses described in the three preceding categories if a circumstance giving rise to Federal jurisdiction had existed, or a combination of offenses; (5) any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device, or any other dangerous weapon, or involves a failure to register under 18 U.S.C. § 2250; and (6) a case that involves a serious risk that the defendant will flee or a serious risk that the defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror. *See* 18 U.S.C. § 3142(f)(1)–(2).

[2] Another subsection requires the judge in certain circumstances to temporarily detain a person who "is not a citizen of the United States or lawfully admitted for permanent residence" and to "direct the attorney for the Government to notify . . . the appropriate [immigration] official" that the person has been arrested. 18 U.S.C. § 3142(d)(1)(B). This subsection gives immigration officials up to ten days to take the person into custody before the court must determine whether the person should be released or detained pending trial on the criminal charges. *See id.* ("If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings."). "[I]t does not appear that the notice provision of subsection (d) applies to this case," *United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 n.2 (10th Cir. 2017) (per curiam), given that deportation officials with ICE's Enforcement and Removal Operations division have known about the Defendant's presence since at least July 9, 2018, ECF No. 1-1. *See also United States v. Stepanyan*, No. 3:15cr234, 2015 WL 4498572, at *4 (N.D. Cal. July 23, 2015) (explaining that because "ICE ha[d] been on notice of Stepanyan's presence at least since July 6 and ha[d] not taken him into custody," the court was required "to treat Stepanyan like any other defendant under the Bail Reform Act"). Moreover, at the July 24 hearing, the attorney for the Government stated unequivocally that the court's decision whether to

3

"shall hold a hearing to determine whether any . . . conditions set forth in subsection (c) of this section will reasonably assure" the defendant's appearance "as required . . . in a case that involves[] a serious risk that such person will flee"). "With regard to the risk of flight as a basis for detention, the government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's presence at future court proceedings."[3] *Stewart*, 19 F. App'x at 48; *see also Mallory*, 268 F. Supp. 3d at 861 ("[T]he government is only required to show by a preponderance of evidence that the defendant poses a risk of flight and that no conditions of release can reasonably assure his appearance at trial."). If the judge, after considering the factors set out in subsection (g), determines that the Government has not met its burden, then the person must be released from custody subject to "the least restrictive . . . condition, or combination of conditions, that [the] judicial officer determines will reasonably assure the appearance of the person as required," 18 U.S.C. § 3142(c)(1)(B). *See Mallory*, 268 F. Supp. 3d at 862; *DeBeir*, 16 F. Supp. 2d at 595.

III. Analysis

The parties agree that this is not a presumption case. 18 U.S.C. § 3142(e)(3). The information available to the Court bearing on whether the Defendant poses a "risk of flight" in the traditional sense—such as his strong ties to the local community and the likelihood that he would not face a lengthy prison sentence if convicted—tends to favor pretrial release with certain reasonably necessary conditions. *See United States v. Villanueva-Martinez*, 707 F. Supp. 2d 855, 857 (N.D. Iowa 2010) ("Were it not for the threat of the defendant's deportation by ICE, he

---

detain the Defendant pending trial in this case is governed by § 3142(e) alone and that temporary detention under subsection (d) is not warranted.

[3] This case does not involve any circumstances that would trigger a presumption "[s]ubject to rebuttal by the person . . . that no condition or combination of conditions will reasonably assure the appearance of the person as required," 18 U.S.C. § 3142(e)(3). The Government also does not contend that releasing the Defendant will endanger the safety of any person or the community. *See* 18 U.S.C. § 3142(a), (e)(2)–(3).

clearly would be eligible for pretrial release by this court."). The attorney for the Government, however, urges that no combination of conditions will reasonably assure the Defendant's appearance as required in this judicial proceeding because there is a "high probability" that ICE officials will deport him before the criminal matter is concluded. This position finds some support in federal district court decisions from across the country. *Cf. United States v. Ramirez-Hernandez*, 910 F. Supp. 2d 1155, 1158–59 (N.D. Iowa 2012) (citing the "certainty" that defendants would be immediately taken into ICE custody and then promptly removed to Mexico in concluding there were no conditions of release under § 3142(c) that "would 'reasonably assure' the defendants' appearance at trial" on unlawful-reentry charges); *United States v. Ong*, 762 F. Supp. 2d 1353, 1363 (N.D. Ga. 2010) (citing the defendant's unlawful presence in and lack of ties to the United States, as well as evidence that he "would likely be removed from the United States and not allowed to re-enter," in concluding there were no conditions of release that would reasonably assure his appearance at trial). The Defendant counters that the phrase "serious risk [the person] will flee" as it appears in § 3142(f)(2)(A) requires a risk of voluntary flight by the person and that the risk he will be involuntarily removed from the United States by ICE officials, *without more*, does not permit pretrial detention under § 3142(e)(1). This position finds support in the weight of authority from federal courts across the country. *See, e.g., Ailon-Ailon*, 875 F.3d at 1337 ("We agree . . . that a risk of involuntary removal does not establish a 'serious risk that the defendant will flee' upon which pretrial detention may be based." (collecting cases) (brackets omitted)); *United States v. Santos-Flores*, 794 F.3d 1088, 1091–92 (9th Cir. 2015) (explaining that the "district court erred in relying on the existence of an ICE detainer and the probability of Santos-Flores's immigration detention and removal from the United States" in ordering that he be detained pending trial in part because the "risk of nonappearance referenced

5

in 18 U.S.C. § 3142 must involve an element of volition"); *United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1111 (D. Minn. 2009) (rejecting the government's argument "that any defendant encumbered by an ICE detainer must be detained pending trial" as inconsistent with the Bail Reform Act's "carefully crafted detention plan," and concluding that the "risk of nonappearance" referenced in § 3142 must "involve an element of volition" by the defendant); *United States v. Montoya-Vasquez*, No. 4:08cr3174, 2009 WL 103596, at *5 (D. Neb. Jan. 13, 2009) (concluding that the term "'failure to appear' as used in the Bail Reform Act is limited to the risk that the defendant . . . would fail to appear by virtue of his own volition, actions[,] and will" and that "the risk of removal by ICE, if cognizable at all under the Act, cannot be determinative of the question of a defendant's eligibility for release" before trial).

The question before this Court is whether the likelihood that ICE officials will deport the Defendant before trial constitutes a "risk of flight as a basis for detention" under the Bail Reform Act's plain language, and, if so, whether the Government can rely exclusively[4] on that likelihood (however strong) to prove "that no combination of conditions will reasonably assure the [D]efendant's presence at future court proceedings," *Stewart*, 19 F. App'x at 48. The United States Court of Appeals for the Fourth Circuit has yet to consider this question, and it appears to be an issue of first impression in this judicial district.[5] For the reasons that follow, I conclude

---

[4] The Government argued that the existence of an ICE detainer alone was sufficient to require the Defendant's detention under the Bail Reform Act as a flight risk, but the Government also argued that other factors warranted detention on flight risk grounds.

[5] At least one decision from a district court within the Fourth Circuit has cited the defendant's status as a removable alien as a highly probative, but not necessarily conclusive, factor in determining that the defendant should be detained under § 3142(e) because no conditions of release could reasonably assure his appearance at future judicial proceedings. *See United States v. Benitez-Elvira*, No. 1:14cr391, 2014 WL 6896142, at *2–4 & n.9 (M.D.N.C. Dec. 5, 2014) (Auld, M.J.) (also citing the "overwhelming evidence" that defendant knowingly used a false name and social security number to apply for a passport, frequently traveled between Mexico and the United States using false documents, was unlawfully present in the United States and had no close ties to anyone who was lawfully present in this country, and could be deported after serving any custodial sentence for the charged offenses). Another has cited the fact that

6

that the Government's position is inconsistent with the Bail Reform Act's text and structure and that the likelihood of deportation before trial, while relevant to whether the individual Defendant poses a substantial flight risk if released under § 3142, is not sufficient for the Government to show that there are no conditions of release that can reasonably assure the Defendant's appearance as required.

When interpreting a statute, the court "must first determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Laber v. Harvey*, 438 F.3d 404, 418–19 (4th Cir. 2006) (en banc). "If the meaning of the text is plain—in other words, if it bears only one reasonable interpretation—that meaning controls." *Raplee v. United States*, 842 F.3d 328, 332 (4th Cir. 2016). Given that "[t]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context," however, "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000) (internal quotation marks omitted); *accord Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.").

The Bail Reform Act authorizes pretrial detention when there is a serious risk that the defendant "will flee" if released from government custody. 18 U.S.C. § 3142(f)(2)(A). "The ordinary meaning of 'flee' suggests volitional conduct." *Ailon-Ailon*, 875 F.3d at 1338. For

---

the defendant was or would soon be in immigration custody as a reason why he "plainly [would] not be a flight risk" if released pending trial. *United States v. Tabora-Tabora*, No. 5:17cr324, 2017 U.S. Dist. LEXIS 204610, at *2–4 (E.D.N.C. Dec. 13, 2017) (Boyle, J.) (upholding a magistrate judge's order denying the government's motion for detention and releasing the defendant to his wife as third-party custodian). The judges in these cases were not asked to decide whether the risk that the defendant would be involuntarily removed from the United States while the criminal matter was pending, without more, authorizes pretrial detention under the Bail Reform Act.

example, *Black's Law Dictionary* defines the verb "flee" as: "To run away; to hasten off . . . . To run away or escape from danger, pursuit, or unpleasantness; to try to evade a problem. . . . To vanish; to cease to be visible . . . . To abandon or forsake." *Black's Law Dictionary* (10th ed. 2014). "Flee" also means "to take flight; to try to escape or seek safety by flight." *Oxford English Dictionary* (3d ed. 2000). These definitions support the conclusion in this statutory context that a person who "will flee" or who poses a serious "flight risk" if released from detention pending trial will intentionally make himself or herself unavailable for prosecution. *Ailon-Ailon*, 875 F.3d at 1138.

The Bail Reform Act's structure also supports this plain-language interpretation. First, "'Congress chose not to exclude removable aliens from consideration for release or detention in criminal proceedings,' but instead set forth 'specific procedures to be followed when a judicial officer determines that a defendant is not a citizen of the United States or lawfully admitted for permanent residence,'" *Ailon-Ailon*, 875 F.3d at 1138 (quoting *Santos-Flores*, 794 F.3d at 1090–91), and "such person may flee or pose a danger to any other person or the community," 18 U.S.C. § 3142(d)(1)(B), (2). In that situation, the judge "shall order" the person temporarily detained for up to ten days "and direct the attorney for the Government to notify," 18 U.S.C. § 3142(d), the appropriate ICE official in order to permit the person's deportation or exclusion. *See Ailon-Ailon*, 875 F.3d at 1138. If ICE declines or fails to take the person into immigration custody, then the "person shall be treated in accordance with the other provisions of [§ 3142], notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings." 18 U.S.C. § 3142(d). This subsection "demonstrates that a defendant 'is not barred from release [simply] because he is a deportable alien." *Ailon-Ailon*, 875 F.3d at 1138 (quoting *United States v. Adomako*, 150 F. Supp. 2d 1302, 1307 (M.D. Fla.

8

2001)); *see also Stepanyan*, 2015 WL 4498572, at *2 (rejecting the government's argument that a defendant's "status as a deportable alien itself bars him from release [as] incompatible with the clear directives of § 3142(d)").

Second, the statute sets out five categories of federal offenses where, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions can reasonably assure the appearance of the person as required," 18 U.S.C. § 3142(e)(3). By including certain offenses for which detention is presumed, Congress sought to address those defendants who "have both the resources and foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences." S. Rep. No. 98-225, at 20 (1984), *as printed in* 1984 U.S.C.C.A.N. 3182, 3203; *see also United States v. Sheikh*, 994 F. Supp. 2d 736, 739 (E.D.N.C. 2014) (noting that this subsection reflects Congress's finding that "certain [defendants] pose special risks of flight"). The fact that Congress did not include unlawful reentry on this list of offenses indicates that removable aliens, as a category of defendants, do not inherently pose a heightened risk of flight, *see Ailon-Ailon*, 875 F.3d at 1138, and that the risk of imminent deportation itself does not justify detaining an individual on grounds that no conditions of release could reasonably assure that person's appearance at trial, *see Barrera-Omana*, 638 F. Supp. 2d at 1111.

Finally, I find that a court should consider "the reason that a defendant may fail to appear, whether by his own volition or by way of a removal order," in assessing whether no conditions of release could reasonably assure the defendant's appearance. *Ramirez-Hernandaz*, 910 F. Supp. 2d at 1160. *See Barrera-Omana*, 638 F. Supp. 2d at 1111–12 (explaining that the court must evaluate a defendant's risk of flight "on a personal and individualized basis"); *United States v. Chavez-Rivas*, 536 F. Supp. 2d 962, 968 (E.D. Wis. 2008) (rejecting the government's

9

suggestion that the court may properly consider only the defendant's status as a deportable alien, "to the exclusion of the § 3142(g) factors," in determining whether the defendant should be detained as a flight risk). Releasing a defendant on bail is a "device which [courts] have borrowed to reconcile" the tension between an accused person's "traditional right to freedom during trial" and "the possibility that the defendant may flee or hide himself" because it has long been "assumed that the threat of forfeiture of one's goods will be an effective deterrent to the temptation to break the conditions of one's release." *Bandy v. United States*, 81 S. Ct. 197, 197–98 (1960) (Douglas, J.). In keeping with this tradition, the Bail Reform Act instructs that judges "shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required," consider certain factors that would tend to bear on an *individual* defendant's decision whether to appear or abscond. *See* 18 U.S.C. § 3142(g)(1)–(3); *cf. Bandy*, 81 S. Ct. at 198 (noting that factors such as a defendant's "long residence in a locality [or his] ties [to] friends and family . . . . may offer a deterrent at least equal to that of the threat of forfeiture" where the defendant cannot post a secured bond). These factors suggest that Congress was less concerned with the risk of "nonappearance" generally than it was with the risk that an individual "defendant could, of his own volition, abscond to escape the consequences of prosecution,"[6] *Stepanyan*, 2015 WL 4498572, at *4. *See Chavez-Rivas*, 536 F. Supp. 2d at 968–69. For example, the threat of being involuntary removed from one's family and local community is a consideration under 18 U.S.C. § 3142(g)(3)(A) that may well show that an

---

[6] Moreover, the Bail Reform Act "does not seek ironclad guarantees, and the requirement that the conditions of release 'reasonably assure' a defendant's appearance cannot be read to require guarantees against flight." *Chavez-Rivas*, 536 F. Supp. 2d at 969 (quoting *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992)). Subjecting an accused person to pretrial detention *solely* to eliminate the risk that he "would not appear in [federal] court due to his being removed from this country by the same government that is prosecuting him," *Montoya-Vasquez*, 2009 WL 103596, at *4, unnecessarily elevates concerns about "nonappearance" generally over the Act's presumption in favor of releasing accused persons awaiting trial.

individual defendant has "significant incentive" to "absent himself from further proceedings to avoid possible imprisonment followed by deportation," *Benitez-Elvira*, 2014 WL 6896142, at *2. *Accord Chavez-Rivas*, 536 F. Supp. 2d at 969 (noting that the threat of a "significant prison sentence followed by deportation" if convicted "may create some incentive to flee" prosecution). The Bail Reform Act, however, simply does not allow the court to "substitute a categorical denial of bail" based solely on the chance that the defendant may be deported in place of a proper individualized assessment of whether that individual defendant poses too high a flight risk to release pending trial. *Santos-Flores*, 794 F.3d at 1091–92.

IV. Conclusion

"To be clear, the [C]ourt does not deny that immigration consequences are relevant to a defendant's 'risk of flight' in the bail determination, as that phrase has always been understood: that a defendant could, of his own volition, abscond to escape the consequences of prosecution, perhaps made more onerous by the risk of deportation." *Stepanyan*, 2015 WL 4498572, at *4. But I must apply the Bail Reform Act as written, and as explained, the statute's plain language and structure convince me that the risk a person will be involuntarily removed from the United States before trial, without more, does not authorize the Court to detain that person on grounds that he or she poses a substantial risk of flight that cannot be overcome with conditions crafted to reasonably assure the person's appearance as required.

ENTERED: August 3, 2018

*[signature: Joel C. Hoppe]*

Joel C. Hoppe
United States Magistrate Judge